**UNITED STATES v. COLLINS et al.**
**Civil Action No. 404.**

District Court, E. D. Virginia, at Norfolk.
April 5, 1948.

A. Devitt Vanech, Asst. Atty. Gen., Aubrey Lawrence, Sp. Asst. to Atty. Gen., and Franklin C. Baugh, Sp. Asst. to U. S. Atty., of Norfolk, Va., for the Government.

James G. Martin, of Norfolk, Va., for defendants Martin and Norfolk Southern Ry. Co.

Alan J. Hofheimer, of Norfolk, Va., for defendant Twohy.

The remaining defendants were not represented by counsel.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially, state separately its conclusions of law thereon, and direct the entry of the appropriate judgment, pursuant to Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

### Findings of Fact.

In March, 1945, this action was instituted by the United States of America under the provisions of 28 U.S.C.A. § 41(1), against Samuel Q. Collins, Elizabeth S. Martin and Marianne R. Martin, for the purpose of quieting title to a certain tract of land, described in the complaint, in the County of Norfolk, Virginia, to which the defendants claimed some right, title or interest.

The defendants answered, and no further action was taken until July 1946, when the Government filed its supplemental com-

plaint, in which it claimed title, not only to the tract described in the original complaint, but to a very much larger tract of land, all of which, it was alleged, was then in the City of Norfolk, and named as defendants, besides the three original defendants, Grace M. Twohy, A. E. Krise, Jr., Norfolk Southern Railway Company, and the City of Norfolk, all of which defendants, it was alleged, claimed some right, title or interest, or asserted liens against, the tract of land described in the supplemental complaint. The supplemental complaint concluded with a prayer for a judgment quieting title to the land claimed by the Government.

The basis of the Government's claim to the land here in controversy, is a deed dated September 21, 1808, and duly recorded in the Clerk's Office of Norfolk County on October 17, 1808, from William Thompson and wife to "Thomas Jefferson, President of the United States, and his successors in office for the sole use and benefit of the said United States of America * * *." This deed conveys:

"* * * a certain piece or parcel of land situate on a point called Ferry Point in the County of Norfolk and bounded as by the annexed plat and survey appears in the following manner. Beginning at a stone marked C.S. in the line of the land formerly William Herberts, from thence running North nineteen degrees fifteen minutes West binding on the land devised in the Will of Charles Smallwood to his son Joseph to Elizabeth River, thence binding on the River North sixty-six degrees thirty minutes East twelve poles to the extreme end of the Point, thence South nine degrees thirty minutes West twelve poles and seventeen lengths to a stake in the aforesaid Herbert's Line, thence along the line South fifty-six degrees West ten poles to the first station."

The "annexed plat" referred to in the deed, was recorded in the deed book along with the deed, and alongside of the drawing there is set out substantially the same description by courses and distances as set out in the deed. The plat itself shows the courses, but the distances are not shown on it. The plat does show the Elizabeth River as the Northern boundary of the tract and shows a "creek or cove" extending across the tract in a general northerly direction, to Elizabeth River, the creek or cove coinciding with the easterly boundary for a part, but only a very small part, of its distance, and shows the southeastern corner of the tract to be a distance of roughly forty-six feet East of the creek or cove. The plat also shows the tract to have the "Area 136 Sq Poles & 50 lks," which is an area of .85 of an acre.

As the proper determination of this controversy depends to a very great extent upon the correct interpretation of the above plat and description, it is important to bear in mind certain noteworthy details:

(1) No distance is given for the first, or western course, but both the description and the plat show that this course runs from the beginning "to Elizabeth River."

(2) The second course, which is the northern boundary of the tract, is described and appears on the plat as "binding on the River."

(3) The "creek or cove" shown on the plat is *nowhere referred to* in the description of the tract in the deed or in the description set out on the plat.

(4) The plat definitely does *not* show the easterly boundary of the tract as binding on the "creek or cove."

(5) The plat shows the southeastern corner of the tract to be a distance of roughly 46 feet east of the "creek or cove."

The record title of the tract of land conveyed by Thompson to Thomas Jefferson, President, derives from a patent from the Colony of Virginia dated September 14, 1636, and duly recorded in the Land Office at Richmond. The record title of the defendants, Collins, the Martins and Twohy, derives from a grant dated February 1, 1854, from the Commonwealth of Virginia to Joseph E. Read, duly recorded in the Land Office. The chain of title in both instances is unbroken. The land included within the Read grant embraces all, or certainly all but a very small parcel, of the land now claimed by the Government, but of course the patent which the Government, claims as its source of title is an earlier grant.

The Government made surveys of the land which it claimed to have acquired by the Thomas Jefferson deed, in 1843, in 1923, in 1943 and 1944. In 1923, the Government erected a fence along what it claimed to be the southern and eastern boundaries of its property, which being partially destroyed, was replaced by a more substantial fence along these boundaries in 1927. Besides erecting the fence, the Government placed certain personal property within the area fenced in. The 1927 fence is still in a sufficient state of preservation to be readily discernible. Other than as just indicated, the Government has never actually occupied or used any portion of the land here claimed. On the other hand, defendants' predecessors in title were for a long time in actual physical possession of the greater portion, if not all, of the land now claimed by the Government. Defendants' predecessors in title operated a very large lumber business on this property for many years until it was destroyed by fire in 1912. Prior to 1946, the Government never in any way asserted any claim whatsoever to any land other than that enclosed by its fence.

In building its fence, the Government established as the southwest corner of its property, a point 6½ feet east of what it contends to be the true starting point, described in the Thomas Jefferson deed as "a stone marked C.S." This was done so as not to encroach upon property claimed, fenced in and occupied by the Imperial Tobacco Company to the west of the property claimed by the Government. The Imperial Tobacco Company is not a party to this action and the Government makes no claim herein to the 6½ foot strip of land upon which the Government's proof shows that the Imperial Tobacco Company has encroached. However, in building its fence, as shown by its survey made in 1944 (Government Exhibit 22), the Government did not diminish the distance of the southern course by 6½ feet, but built its fence the full distance of 165 feet as called for by the Thomas Jefferson deed.

In view of the Government's waiver in this action of any claim against the Imperial Tobacco Company, I find as a fact that the true starting point for the determination of the perimeter of the land to which the Government is now entitled, is the southwest corner of the Government's property as shown on the plat made by the "Office of the Post Engineer, Fort Monroe, Va., dated 3/25/44" entitled "Relocation of Military Reservation at Ferry Point—Norfolk, Va., from Survey by Simpson in 1843 and by QMC Langley Field, Va., 1923, Plan QMC 9," which is "Government Exhibit 22" in this action. This point is identified on the ground by the southwest corner post of the Government's fence.

Either by reason of accretion, or by reason of the recession of the Elizabeth River, the southern boundary of the Elizabeth River is substantially further to the north of the beginning point just described, than it was in 1808.

There is no such creek or cove in existence now, as the "creek or cove" shown on the Nicholson plat which was attached to the Thomas Jefferson deed. I find that Spotico Creek, which lies to the east of the land here in controversy, is a different water course from the "creek or cove" shown on the Nicholson plat.

### Conclusions of Law.

█ From the facts found above, I conclude that this Court has jurisdiction both of the subject matter and the parties to this action.

█ I further conclude that the deed from William Thompson and wife to Thomas Jefferson, President, etc., conveyed a fee simple title to the United States of America; and further, that the title of defendants' predecessors in title, deriving from a grant from the Commonwealth later in time than the patent which is the source of the Government's title, is inferior to the title of the Government in and to the land acquired by the Government by the Thomas Jefferson deed.

█ I conclude that the natural monuments prevail over courses and distances, and inasmuch as the first course in the Thomas Jefferson deed runs to the Elizabeth River, and the northern boundary of the land therein conveyed is described as "binding on the River," I conclude that the northern boundary of the land to which the

Government is now entitled, is the Elizabeth River as presently located. I further conclude that the easterly and westerly boundary lines of the land to which the Government is now entitled, should be the courses described in the Thomas Jefferson deed, prolonged to their intersection with the Elizabeth River. However, the Government having waived its claim to the westerly 6.5 feet of its southern boundary in order not to encroach upon the land claimed by the Imperial Tobacco Company, I conclude that the western boundary line of the land to which the Government is now entitled, extends from the beginning point as set out in my finding of fact, along the lines of the Imperial Tobacco Company in a northerly direction to the Elizabeth River. Inasmuch as the Government waived its claim to 6.5 feet of its southern boundary line on the western end, the southern boundary line of the Government should be diminished in distance to the same extent. However, the Government built its fence the full distance of 165 feet as called for in the Thomas Jefferson deed. Inasmuch as the Government built its fence in 1923, and renewed it in 1927, I conclude that all the elements of adverse possession exist, and that therefore the Government has acquired title to the strip of land, 6½ feet wide, on the eastern edge of its land, by adverse possession. I therefore conclude that the southern boundary of the land to which the Government is now entitled, is the southern boundary as shown by the Government's said 1944 map (Government Exhibit 22), and the eastern boundary line is as shown on said map, and extends from the eastern extremity of the southern boundary to the Elizabeth River.

To express it differently, I conclude that the Government is now entitled to all the land enclosed on the southern and eastern sides by its fence, bounded on the north by the Elizabeth River and on the west by the line of the property of the Imperial Tobacco Company.

It is to be noted that the area of the tract of land acquired by the Government by the Thomas Jefferson deed, was .85 of an acre. The result of my conclusions, as stated above, is to confirm and quiet the title of the Government to a tract of land, probably more than four times that area. This result follows from the facts that accretion has taken place, or that Elizabeth River has receded, and my conclusion that Elizabeth River, as the northern natural boundary of the tract, prevails over the distances as set out in the deed.

It would seem that the effect of the conclusion I have reached is to confirm the title of the Government to all the land which it could possibly have claimed under the allegations of the original complaint.

I conclude that the claim of the Government to the very much larger tract of land, asserted in its supplemental complaint, is totally without merit.

As I understand it, the claim of the Government asserted in its supplemental complaint to the Twohy land and land to the east of it, is based upon three premises, two of which seem to me to be entirely unsound. It would seem that the Government's first premise is that natural boundaries take precedence over stated courses and distances. With this premise, I agree. The second premise is that the "creek or cove" shown on the plat attached to the Thomas Jefferson deed, constituted the eastern boundary of the tract acquired by Thomas Jefferson, President. I find absolutely no basis for such a contention. The Government contends that the description of the eastern boundary of the tract described in the Thomas Jefferson deed *should read*, "thence binding on the river, creek or cove, south 9 degrees, 30 minutes West 12 poles and 17 lengths to a stake." The plain answer to this contention is that the description of this boundary in the deed *does not so read:* The deed describes this course as "thence South nine degrees thirty minutes West twelve poles and seventeen lengths to a stake." The "creek or cove" shown on the plat never appears in the description at all, and moreover, the plat plainly shows that the "creek or cove" does not constitute the eastern boundary of the tract. The Government's third premise is that the "creek or cove" shown on the plat has moved to the east some six hundred feet, and is now Spotico Creek. I find no basis whatever for such a conclusion.

My own surmise is that the "creek or cove" shown on the plat was filled up and ceased to exist during the very extensive lumbering operations which took place there over a period of many years. But in my opinion, what became of it is entirely immaterial, as it never constituted a boundary of the tract in question. Therefore, I conclude that the Government is not entitled to any of the land described in its complaint and supplemental complaint other than the land bounded as hereinbefore described.

I conclude that the right of way of the Norfolk Southern Railway is not embraced within the land to which the Government is entitled.

Government counsel will prepare and submit, after notice to counsel for defendants, an order in accordance with the above findings and conclusions.